**MCELROY, DEUTSCH, MULVANEY, & CARPENTER, LLP**
**1300 Mount Kemble Avenue**
**P.O. Box 2075**
**Morristown, New Jersey 07962-2075**
**(973) 993-8100**
**Attorneys for plaintiff, Principal Life Insurance Company**

By: _____
    Steven P. Del Mauro

07 CIV. 7673

ROBINSON

FILED
U.S. DISTRICT COURT
S.D. OF N.Y. W.P.
2007 AUG 28 P 4: 21

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PRINCIPAL LIFE INSURANCE COMPANY, | CIVIL ACTION NO. |
| Plaintiff, | |
| vs. | |
| MOSES JACOBOWITZ, | |
| Defendant. | |

## CIVIL ACTION - COMPLAINT

Principal Life Insurance Company ("Principal Life"), maintaining its principal place of business located at 711 High Street, Des Moines, Iowa 50392, by way of complaint against defendant, Moses Jacobowitz ("Jacobowitz"), alleges and says:

### JURISDICTION

1.      Principal Life is an insurance corporation of, and maintains its principal place of business in, the State of Iowa, and is a citizen of the State of Iowa within the meaning and intent of 28 U.S.C. §1332.

2.    Jacobowitz maintains a primary residence located at 41 Satmar Drive, NR 202, Monroe, New York 10950-8837 and is a citizen of the State of New York within the meaning and intent of 28 U.S.C. §1332.

3.    The amount in controversy between the parties exceeds the sum of $75,000.00, exclusive of interest and costs of suit.

4.    This action has been properly venued in this judicial district pursuant to 28 U.S.C. §1391.

## FIRST COUNT

5.    Principal Life is, and during all times relevant has been, in the business of underwriting policies of disability insurance and is authorized to transact the business of insurance in the State of New York.

6.    On April 21, 2004, Jacobowitz executed an application, Parts A and C, seeking the issuance of a policy of disability income insurance bearing policy number 7595077.  The application, Parts A and C, seeking the issuance of a policy of disability income insurance is fully incorporated herein by reference as though set forth at length.

7.    On May 5, 2004, Jacobowitz completed the application, Part B, seeking the issuance of a policy of disability income insurance bearing policy number 7595077.  The insurance application, Part B, seeking the issuance of a policy of disability income insurance is fully incorporated herein by reference as though set forth at length.

8.    On May 18, 2004, Jacobowitz executed the application, Part D, and the Amendment to application seeking the issuance of a policy of disability income insurance bearing policy number 7595077.  The insurance application, Part D, and the Amendment to application seeking the

2

issuance of the policy of disability income insurance are fully incorporated herein by reference as though set forth at length.

9.      In executing the insurance applications, Jacobowitz knew that he was required to provide truthful, accurate and honest answers to the questions present on the insurance applications.

10.     In executing the insurance applications, Jacobowitz knew that Principal Life would rely upon the answers recorded on the insurance applications in determining whether Jacobowitz was insurable and qualified for the Policy applied for.

11.     In executing the insurance applications seeking issuance of the policy of disability income insurance, Jacobowitz knew that he may be subject to civil and/or criminal penalties in the event he knowingly made a false statement in order to obtain an insurance policy and/or insurance benefits.

12.     In executing the insurance application, Part A, seeking the issuance of the policy of disability income insurance, Jacobowitz provided the following answers:

> 9. **MEDICAL HISTORY**
>
> a.  Within the last five (5) years, have you been treated for or been diagnosed as having a heart condition, chest pain, stroke, back or neck problem, psychological condition (including, but not limited to, counseling from a mental health or substance abuse provider, and/or psychotherapy), cancer, diabetes, alcohol abuse or drug dependency?
> **NO**
>
> If yes, provide details below, including dates and healthcare provider's name and address.
>
> b.  Current Height  <u>5' 6"</u>   Weight <u>170</u> Have you lost more than 10 lbs. in the last year?    **NO**

13.     In completing the insurance application, Part B, seeking the issuance of the policy of disability income insurance, Jacobowitz provided the following answers to the questions contained

3

therein:

18.  In the last ten years, have you had, been treated for or been diagnosed as having:

a.  high blood pressure, heart attack, chest pain, heart murmur, irregular heart beat, stroke, or any other disease or disorder of the heart or blood vessels?                                    **NO**

\*   \*   \*

g.  diabetes, borderline diabetes, sugar in the urine, thyroid disorder or any other disease or disorder of the glandular system?    **NO**

\*   \*   \*

i.  back or neck pain, disc problems, spinal sprain or strain, sciatica, arthritis, carpal tunnel syndrome, or any other disease or disorder of the bones, joints, or muscles?                      **NO**

\*   \*   \*

21.  Who is your Primary Physician?  **NONE**

22.  In the last ten years:

a.  have you had any medical tests (other than an HIV test), hospitalization, illness or injury not provided in response to a previous question? (If yes, explain below)           **NO**

b.  have you consulted a doctor, chiropractor, psychiatrist, psychologist, counselor, therapist or other healthcare provider not provided in response to a previous question? (If yes, explain below)
                                                                 **NO**

23.  Are you taking or have you been advised to take any medication or treatment not provided in response to a previous question? (If yes, explain below)                                          **NO**

24.  Current Ht <u>5 ft 8 in</u>  Wt <u>160 lb</u>  Have you lost more than 10 lbs. in the last year?                                        **NO**

14.    The insurance application required Jacobowitz to provide details to any question

answered "Yes" to include dates, details, diagnosis, types and results of treatment, healthcare

4

providers full name and address.

    15.    Having answered "No" to each of the foregoing questions, Jacobowitz failed to provide any details in the remarks section of the application.

    16.    Through and by virtue of the execution of the insurance applications seeking issuance of the policy of disability income insurance, Jacobowitz expressly represented, acknowledged and agreed:

> **AGREEMENT: Statements In Application:** I represent that all statements in this application are true and complete to the best of my knowledge and belief and were correctly recorded before I signed my name below. I understand and agree that the statements in this application, including all of its parts, and statements by the Proposed Insured in any medical questionnaire that becomes a part of this application, will be the basis of any insurance issued. I understand that material misrepresentations could mean denial of an otherwise valid claim and rescission of the policy during the contestable period.

> **When Insurance Effective:** I understand and agree that the Company shall incur no liability unless: (1) a policy issued on this application has been received and accepted by the owner and the first premium paid; and (2) at the time of such receipt and payment, the person to be insured is actually in the state of health and insurability represented in this application, medical questionnaire, or amendment that becomes a part of this application; and (3) the Part D of the completed Tele-App interview or the Delivery Receipt form is signed by me and the Proposed Insured (if different) and dated at delivery. If these conditions are met, the policy is deemed effective on the Policy Date stated in the policy.

> **Limitation of Authority:** I understand and agree that no agent, broker, licensed representative, telephone interviewer, or medical examiner has any authority to determine insurability, or to make, change, or discharge any contract, or to waive any of the Company's rights. The Company's right to truthful and complete answers to all questions on this application and on any medical questionnaire that becomes a part of this application may not be waived. No knowledge of any fact on the part of any agent, broker, licensed representative, telephone interviewer, medical examiner, or other person shall be considered knowledge of the Company unless such fact is stated in

this application.

\* \* \*

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

17.    On May 18, 2004, Jacobowitz executed an Amendment to Application pursuant to which Jacobowitz expressly acknowledged, represented and agreed:

This Amendment is part of the Application.  Except as modified above, this Amendment is subject to all agreements contained in the application. The Application and this Amendment are to be taken as a whole and are to be considered as the basis for and as a part of the Policy. To the best of my knowledge and belief, in all other respects, the statements and answers in the Application continue to be, without change, true and complete as of the date of the Amendment.

18.    On May 18, 2004, Jacobowitz executed Part D of the insurance application pursuant to which Jacobowitz expressly acknowledged, represented and agreed:

**AGREEMENT:**

**Statements In Application:**  I have read all the questions and answers obtained during the telephone application interview.  This includes Part B on the Proposed Insured.  I represent that all statements are true and complete to the best of my knowledge and belief and were correctly recorded before I signed my name below. I have also signed a copy of this Agreement/Acknowledgment of Delivery included with my policy.  I understand and agree that the statements in the application, including all of its parts, and statements by the Proposed Insured in an medical questionnaire that becomes a part of this application, will be the basis for and form a part of the policy.  I understand that material misrepresentations could mean denial of an otherwise valid claim and rescission of the policy during

6

the contestable provision.

**When Insurance Effective:** I understand and agree that the Company shall incur no liability unless: (1) a policy issued on this application has been received and accepted by the owner and the first premium paid; and (2) at the time of such delivery and payment, the person to be insured is actually in the state of health and insurability represented in the application, medical questionnaire, or amendment that becomes a part of the application; and (3) the Part D of the completed Telephone-Application interview or the Delivery Receipt form is signed by me and the Proposed Insured (if different) and dated at delivery. If these conditions are met, the policy will then be deemed effective on the Policy Date stated in the policy.

**Limitation of Authority:** I understand and agree that no agent, broker, licensed representative, telephone interviewer, or medical examiner has any authority to determine insurability, or to make, change, or discharge any contract, or to waive any of the Company's rights. The Company's right to truthful and complete answers to any questions on the application and on any medical questionnaire that becomes a part of this application may not be waived. No knowledge of any fact on the part of any agent, broker, licensed representative, telephone interviewer, medical examiner, or other person shall be considered knowledge of the Company unless such fact is stated in the application.

\* \* \*

**INSURABILITY DATES:**

If the application was submitted on a C.O.D. (no premium deposit) basis, I verify that the information in Part A and B of the application truly reflects the Proposed Insured's health or insurability as of the date I sign Part D of this application.

**SIGNATURES**

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such

violation.

19.     On the basis of statements and representations contained in the written insurance applications, and in reliance upon Jacobowitz' complete candor, honesty and openness in disclosing information in response to the questions present on the applications, Principal Life approved the issuance of a policy of disability income insurance bearing policy number 7595077.

20.     The policy of disability income insurance contains a policy date of May 18, 2004, and provides a maximum monthly benefit of $2,725.00, following a 90 day elimination period, with benefits payable to age 65.

21.     The policy of disability income insurance further provides a residual disability benefit, an automatic increase option benefit, a capital sum benefit of $32,700.00, and a death benefit in the amount of $8,175.00.

22.     The policy of disability income insurance provides in the section entitled **THE CONTRACT**:

> **ENTIRE CONTRACT**
>
> The Policy, the attached Applications, and any attached riders or endorsements make up the entire contract.
>
> *  *  *
>
> **TIME LIMIT ON CERTAIN DEFENSES**
>
> In issuing the coverage(s) under the Policy, We have relied on the statements and representations on the Application. We have the right to void the coverage(s) due to a material misstatement or omission in the Application. However, after two (2) years from the effective date(s), no material misstatements or omissions, except fraudulent statements or omissions, made by You or the Owner in an Application will be used to void the coverage.

23.     Jacobowitz executed a disability claim notice on December 19, 2006, seeking benefits

8

due to a total disability alleged to have commenced on June 24, 2006.

24.    In the disability claim notice and accompanying attending physician statement, Jacobowitz represented that he became totally disabled due to osteoarthritis of both knees.

25.    At the time Jacobowitz alleged to have become totally disabled, Jacobowitz was 52 years of age, having been born on August 15, 1954.

26.    Following receipt of Jacobowitz' disability claim forms, and during an investigation thereof, Principal Life discovered, for the first time, that the statements and representations made by Jacobowitz in response to the questions present on the insurance applications were knowingly and intentionally false; that Jacobowitz knowingly and intentionally failed and omitted to disclose material facts; and otherwise knowingly and intentionally failed to accurately and/or honestly disclose material information in response to the questions present on the insurance applications which, if disclosed, would have caused the non-issuance of the policy of disability income insurance as applied for and issued by Principal Life.

27.    Specifically, and by way of illustration only, Jacobowitz knowingly and intentionally made material misstatements of facts; knowingly and intentionally failed, refused and omitted disclosed material facts; and otherwise knowingly and intentionally failed to correctly and truthfully answer the questions present on the insurance applications in that:

> a.    Jacobowitz had been diagnosed and treated for degenerative arthritis of both knees, with degenerative tears of the medial and lateral menisci since November 8, 1999, and had been diagnosed and treated for osteoarthritis of the right knee, chrondromalacia and meniscus tears of the right knee since May 23, 2000;
>
> b.    Jacobowitz had undergone arthroscopic surgery to both the left and right knees, as well as received physical therapy treatment and medication.

9

c. Jacobowitz had been diagnosed with and prescribed medication for the treatment of hypertension.

d. Jacobowitz had been diagnosed with, and prescribed medication for treatment of diabetes.

e. Jacobowitz had been diagnosed with, and prescribed medication for treatment of gout.

f. Jacobowitz had been diagnosed with, and prescribed medication for treatment of obesity.

g. Jacobowitz had undergone consultation, examination and/or treatment with Drs. Steven Harwin, James Israel and Denise Serrano; had been an in-patient at Beth Israel Medical Center at which time he received arthroscopic surgery and had undergone various diagnostic testing for the treatment of the above described medical conditions.

h. Jacobowitz' weight fluctuated from 252 to 270 pounds.

28.    On August 16, 2007, Principal Life formally declared the rescission, *ab initio*, of the policy of disability income insurance and tendered a check in the amount of $5,865.98 representing a return of premiums theretofore paid under the policy of disability income insurance.

29.    Principal Life has no adequate remedy at law and therefore seeks that the policy of disability income insurance bearing policy number 7595077 be declared null and void and rescinded, *ab initio*.

**WHEREFORE** Principal Life demands judgment against Jacobowitz for relief more particularly described as follows:

(a)    an order declaring and adjudging the policy of disability income insurance bearing policy number 7595077 issued to Jacobowitz to be null and void and rescinded, *ab initio*; and

(b)     an order awarding pre-judgment interest, post-judgment interest, costs of suit,

reasonable attorney fees and such other relief as this Court deems equitable and just.

**McElroy, Deutsch, Mulvaney & Carpenter, LLP**
Attorneys for Plaintiff,
Principal Life Insurance Company


By: _____
                    Steven P. Del Mauro

Date:  August 17, 2007
978664_1.doc

11